# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 99-60069

_____

United States of America,
                         Plaintiff-Appellee,

versus

Kirksey McCord Nix, JR. and John Elbert Ransom
                         Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
(1:91-CR-40-PR)

_____

February 12, 2001

Before Kennedy,[*] Jones, and DeMoss Circuit Judges.

PER CURIAM:[**]

Kirksey McCord Nix and John Elbert Ransom were convicted on several counts of conspiracy. Their motion for a new trial was dismissed by the district court. They attempted to appeal this ruling but their notices of appeal were filed late, leading to the dismissal of their appeal. They now appeal from that dismissal. We find that the district court abused its discretion in determining that these notices of appeal were not late due to "good cause or excusable neglect" and reverse and remand.

_____

[*]     Circuit Judge of the Sixth Circuit, sitting by designation.

[**]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Nix and Ransom were convicted in a bizarre and much publicized 1991 case of conspiracy to commit murder-for-hire, wire fraud, and conspiracy to commit wire fraud.  The convictions of Nix and Ransom were upheld by this circuit.  <u>United States v. Sharpe</u>, 995 F.2d 49 (5th Cir. 1993).  In 1995, Nix, acting pro se, filed a motion for a new trial pursuant to Fed. R. Crim. P. 33.  Ransom subsequently joined Nix's motion for a new trial.  Characterizing this motion for a new trial as frivolous and in bad faith, the district court denied it on October 8, 1997.[1]

Under Fed. R. App. P. 4(b)(1)(A)(I), the Defendants had 10 days from the entry of the October 8, 1997 order of denial to file their notices of appeals.  Because October 18, 1997 fell on a Saturday, the final day on which Nix and Ransom could file their notices of appeal was Monday, October 20, 1997.

A copy of the October 8, 1997 order was mailed by the clerk to Nix and Ransom at their respective prison addresses of record, as reflected in the clerk's case file.  However, both Nix and Ransom had recently been moved to new prisons, and the clerk of the court did not send the order to their new addresses.

---

[1]     The delay between the 1995 filing of this motion for a new trial and the district court's 1997 ruling on it was due to Nix's and Ransom's request that the court refrain from ruling on the motion until after the completion of a trial in a related matter.  Thus, any delay by the district court in ruling on this motion was occasioned by the defendants' own request.

Neither Nix nor Ransom filed a written change of address with the clerk of the court. However, both men assert that they informed the clerk of their new addresses by phone. Both men had previously received mailings from the district court at their new addresses, reasonably leading them to believe that their oral changes of address had been received and processed by the clerk.

Nix's copy of the order dismissing the motion for a new trial was mailed by the clerk of the court to his old prison address and arrived there on October 14, 1997. Nix did not receive it at his new prison until October 20, 1997, the last day on which he could file a timely notice of appeal.

Similarly, Ransom's copy of the order was mailed by the clerk to his old prison. It did not reach Ransom at his new prison until October 28, 1997, some 8 days after the deadline for filing a notice of appeal.

On October 22, two days after the expiration of the deadline for filing notices of appeal, Nix filed a request for an extension of the time. That same day, Nix filed his notice of appeal. Ransom filed his own notice of appeal on October 31, 1997, some eleven days after the passage of the deadline.

The Government moved to dismiss these appeals because they were filed late. This court remanded to the district court to determine whether the filings were late due to excusable neglect or good cause, pursuant to Fed. R. App. Pro. 4(b)(4).

The district court concluded that the late filing of the notices of appeal was not due to excusable neglect or good cause and entered an order to that effect. Nix and Ransom appealed this order. On February 1, 2000 this court again remanded this case to the district court, this time for an application of the five factor equitable test for excusable neglect established by the Supreme Court in Pioneer Investment Services Co. v. Brunswick Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489 (1993). In an order issued May 31, 2000 the district court again determined that Nix's and Ransom's failure to meet the deadline for filing timely notices of appeal was not due to excusable neglect or good cause. In yet another maneuver in this endless pro se litigation, Nix and Ransom now appeal from this May 31, 2000 district court order.

This court reviews the district court's determination that the late filing of the notices of appeal was not due to excusable neglect or good cause for abuse of discretion. United States v. Clark, 51 F.3d 42, 43 (5th Cir. 1995). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Dawson v. United States, 68 F.3d 886, 895 (5th Cir. 1995)(quoting Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990)).

This matter is governed by the Supreme Court's decision in Pioneer, which stands for the principle that the determination

4

of "what sorts of neglect will be considered 'excusable'. . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Services, Co., 507 U.S. at 395, 113 S.Ct. at 1498. The Supreme Court identified five factors to consider in making this equitable determination: "[1] the danger of prejudice to the [non-filing party], [2] the length of the delay and its [3] potential impact on judicial proceedings, [4] the reason for the delay, including whether it was within the reasonable control of the movant, and [5] whether the movant acted in good-faith." Id. at 1498. While Pioneer itself dealt with a deadline in a bankruptcy case, relying on the consistent use of "excusable neglect" in the federal rules this court has applied the teachings of Pioneer to Fed. R. App. P. 4 in criminal cases. See Clark, 51 F.3d at 42.

*Reasons for the Delay*

Applying Pioneer, the district court held that Nix and Ransom themselves were responsible for the delay in the mailed copies of the October 8, 1997 dismissal order reaching them. The district court reasoned that Nix's and Ransom's failure to provide the clerk of the court with written notice of their respective address changes directly led to the delay in the arrival of their copies of the October 8, 1997 order. This delay in the mails in turn led to the late filing of Nix's and Ransom's notices of

5

appeals. The district court therefore concluded that Nix and Ransom were directly at fault for their failure to file timely notices of appeal: no cause existed for this delay other than Defendants-Appellants' failure to keep the district court apprised of their address.

The district court reasoned that Nix's and Ransom's failure to provide written change of address notification was an express violation of Uniform Local Rule of the United States District Courts for the Northern and Southern Districts of Mississippi Rule 17(c).[2] Rule 17(c) notifies all pro se litigants of their "continuing obligation to apprise the court of any address change." However, nothing in this rule requires that the "apprisement" of a change of address be in writing.

Nix and Ransom aver that they gave oral notice, via phone, of their change of address. Additionally, they sent certain documents to the court marked with their proper return addresses. Nix and Ransom also allege that the district court managed to mail correspondence to their correct new addresses *prior* to sending the order of dismissal to the former addresses. Thus, there are substantial indications in the record that Nix and Ransom did

---

[2] Since the events in question, Local Rule 17(c) has been redesignated as Local Rule 11.1. We continue to utilize the former designation in this opinion for consistency with the pleadings and briefs.

"apprise" the district court of their changes of address and that, in fact, the clerk had received and processed this information.

The federal district courts have considerable latitude in interpreting their own local rules of court. A local rule of a federal district court is written by and for district judges to deal with the special problems of their court, and the federal appellate courts therefore give a district judge's interpretation of his court's local rules, when not in conflict with the interpretation of any other district judge, considerable weight. See Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995); Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103 (7th Cir. 1990). However, the district court's construction of Local Court Rule 17 to require written notice is unreasonable in light of the plain meaning of the word "apprise" and the lack of any reference to a writing requirement.

The district court is free to impose a written change of address notification requirement if it so chooses, but it must do so clearly and comprehensibly. Reading a written notice requirement into the current Rule 17(c) is unfair and unreasonable. At a minimum, equity dictates the district court clerk should have informed Nix and Ransom that he could not accept an oral change of address and that written notice was required. Whether the clerk

7

offered such an admonition is a factual matter for the district court to determine on remand.

Because Local Rule of Court 17(c) will not support a construction requiring written change of address notification, we remand to the district court for a factual determination of whether or not Nix and Ransom gave reasonable notice in any form of their new of addresses.

*Bad Faith*

The district court found that Nix and Ransom did not miss the deadline for filing notices of appeal in bad faith. The district court, however, extended the bad faith prong of the Pioneer analysis beyond just the notices of appeal to encompass the underlying motion as well. Because it unequivocally found Nix's and Ransom's underlying motions for a new trial to be in bad faith and frivolous, the district court concluded that this bad faith had infected their notices of appeal too. The district court determined that the bad faith of the underlying motion poisons all pleadings and filings made in furtherance of it.

We can not accept the district court's interpretation of the bad faith prong of Pioneer because to do so would require the appellate courts to review the merits of the underlying appeal in order to determine whether excusable neglect exists. Pioneer does not suggest this: examining the entire record of the underlying

8

case simply to determine whether late filed notices of appeal should be accepted would place an unwarranted burden on the appellate courts. The "faith" prong of the Pioneer analysis relates to the good faith--or lack there of--in connection with efforts to file the appeal, not to the underlying proceedings giving rise to the appeal. There is no question here that, viewed in isolation, Nix's and Ransom's notices of appeal were filed in good faith.

While the good faith prong of Pioneer requires us to focus narrowly on the notices of appeal themselves, we caution the Defendants-Appellants to be mindful of their obligations under Federal Rule of Civil Procedure 11 and Federal Rules of Appellate Procedure 30(b) and 38 before proceeding further with their on-going campaign of pro se litigation.[3] As noted by the district court, Nix and Ransom are habitual litigants who have systematically burdened the federal court system with literally

---

   [3] Federal Rule of Civil Procedure 11 exposes a litigant to sanctions for, among other things, presenting a court with pleadings or motion for an improper purpose "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Federal Rule of Appellate Procedure 30(b) allows a party "who unreasonably and vexatiously increase[s] the costs of litigation through the inclusion of unnecessary materials in the appendix" to be sanctioned. Federal Rule of Appellate Procedure 38 allows this court to determine that an appeal is frivolous and to "award just damages and single or double costs to the appellee" in response.

thousands of pages of frivolous material.[4]   The continuation of such behavior will inevitably lead to sanctions.

*Length of Delay*

The very short interval between the passage of the deadline  and the filing of the late notices of appeal is a <u>Pioneer</u> factor that weighs significantly in favor of Nix and Ransom.  Nix's notice of appeal was dated one day after the deadline and was filed two days after the deadline, while Ransom's notice was signed six days after the deadline and filed eleven days after the deadline.

Neither of the remaining <u>Pioneer</u> factors, the danger of prejudice to the non-filing party and the potential impact on the judicial proceedings, significantly favors either party. Therefore, neither factor influences our equitable analysis.

The district court abused its discretion in failing to take into account substantial evidence that Nix and Ransom had reasonably informed the clerk of their changes of address.  The district court's construction of its Local Court Rule 17(c) to require written change of address notice was unreasonable in view of the plain language of the rule.  The length of the delay was short and the late notices of appeal were not filed in bad faith.

---

[4]    By way of example, Nix's and Ransom's motion for a new trial, the denial of which gave rise to the present proceedings, was 118 pages long with almost 2000 pages of largely irrelevant supporting materials attached.

10

We therefore reverse and remand, with instructions to the district court to determine whether Nix and Ransom in fact gave reasonable --though not necessarily written--notice of their changes of address to the clerk.  If Nix and Ransom did not provide reasonable notice, then their notices of appeal were inexcusably late.  If, however, reasonable notice was given, then the delay in the filing of the notices of appeal was not Nix's or Ransom's fault and their appeals should be allowed to go forward.  **REVERSED and REMANDED.**